# United States Court of Appeals
## For the First Circuit

No. 11-1052

ANGEL LUIS FELICIANO-HERNÁNDEZ,

Plaintiff, Appellant,

v.

MIGUEL A. PEREIRA-CASTILLO, Former Secretary of the Department of Corrections and Rehabilitation and Director of Corrections of the Commonwealth of Puerto Rico, JANE DOE; CONJUGAL PARTNERSHIP PEREIRA-DOE; VÍCTOR M. RIVERA GONZÁLEZ, Former Secretary of the Department of Corrections and Rehabilitation and Director of Corrections for the Commonwealth of Puerto Rico; JANE DOE #2; CONJUGAL PARTNERSHIP RIVERA-DOE #2; ZOÉ M. LABOY-ALVARADO, Former Secretary of the Department of Corrections and Rehabilitation and Director of Corrections of the Commonwealth of Puerto Rico; JOHN DOE; CONJUGAL PARTNERSHIP DOE-LABOY; NYDIA M. COTTO-VIVES, Former Director of Corrections of the Commonwealth of Puerto Rico; JOHN DOE #2; CONJUGAL PARTNERSHIP DOE #2-COTTO; JOSEPH COLÓN-MORALES, Former Director of Corrections of the Commonwealth of Puerto Rico; JANE DOE #3; CONJUGAL PARTNERSHIP COLÓN-DOE #3; DEPARTMENT OF CORRECTIONS AND REHABILITATION FACILITIES SUPERINTENDENTS JOHN POE #1 THROUGH #5,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Federico Lora-López, with whom José J. Nazario De La Rosa was on brief, for appellant.

Carlos Lugo-Fiol, with whom Irene S. Soroeta-Kodesh, Solicitor

General of Puerto Rico, _Leticia Casalduc-Rabell_, Deputy Solicitor General, and _Zaira Z. Girón-Anadón_, Deputy Solicitor General, were on brief for appellees Zoé M. Laboy-Alvarado and Víctor M. Rivera-González.

December 9, 2011

**LYNCH**, **Chief Judge**. In 1981, Angel Luis Feliciano-Hernández, a habitual offender with a record of sexual abuse and rape, was convicted of crimes and sentenced by a Puerto Rico court to a term of perpetual imprisonment for treatment until his rehabilitation, to last a minimum of twelve years. That twelve-year minimum sentence ended in 1993, and Feliciano-Hernández was not released from prison until 2008, fifteen years later.

On June 23, 2009, Feliciano-Hernández brought suit in federal court under 42 U.S.C. § 1983. The defendants are five named former Secretaries of the Puerto Rico Department of Corrections and their spouses and conjugal partnerships, as well as five unnamed Superintendents of prison facilities in the Commonwealth, identified as "John Poe" defendants.

The complaint alleged that the defendant officials had incarcerated Feliciano-Hernández beyond the lawful term of his imprisonment, asserting that this violated the Fifth, Eighth, and Fourteenth Amendments. The complaint sought compensatory damages in excess of $5 million and punitive damages in excess of $2 million.

On motion, the district court dismissed the complaint as to all defendants, in a thoughtful opinion and order, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief could be granted. See Feliciano Hernández v. Pereira Castillo, Civ. No. 09-1569, 2010 WL 3372527

(D.P.R. Aug. 24, 2010). After the complaint was dismissed and judgment was entered on August 24, 2010, Feliciano-Hernández on September 6, 2010, filed a motion for reconsideration and for leave to file an amended complaint, purportedly under Rules 52(b) and 59(a). The district court denied the motion by a short opinion and order, Feliciano Hernández v. Pereira Castillo, Civ. No. 09-1569, 2010 WL 5072567 (D.P.R. Dec. 8, 2010), and this appeal followed.

We hold that the complaint failed to state a claim under the pleading standard set forth by the Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and that the district court did not abuse its discretion in denying reconsideration, including denying leave to file a belated amended complaint. We affirm the dismissal.

I.

The following facts are taken from Feliciano-Hernández's complaint of June 23, 2009, the 1982 opinion of the Supreme Court of Puerto Rico affirming his underlying conviction, People v. Feliciano Hernández, 13 P.R. Offic. Trans. 481, 113 P.R. Dec. 371 (1982), and the 2008 order of the Puerto Rico Court of First Instance regarding plaintiff's petition for a Puerto Rico writ of habeas corpus, People v. Feliciano Hernández, Crim. No. G 80 605 606 (P.R. Ct. of First Instance Apr. 25, 2008). We treat as true the well-pleaded facts in the complaint. SEC v. Tambone, 597 F.3d

436, 438 (1st Cir. 2010) (en banc). We also consider other Puerto Rico court documents on which plaintiff relied.

On April 14, 1981, a Puerto Rico court sentenced Feliciano-Hernández for his convictions on two counts of committing lewd and indecent acts, P.R. Laws Ann. tit. 33, § 4067; two counts of aggravated restraint of liberty, id. § 4172; and one count of unlawful carrying and use of a weapon, P.R. Laws Ann. tit. 25, § 414, as the law then stood. Feliciano-Hernández had also been charged with attempt to commit rape, but the court ordered acquittal of that count. The court took judicial notice of Feliciano-Hernández's two previous convictions for rape and one conviction each for repeated rape and for attempt to commit statutory rape. It sentenced him as a habitual offender to "[p]erpetual imprisonment, for treatment until his social rehabilitation is accomplished" and "adjudged that the minimum imprisonment [would] be 12 years."

We do not repeat the complaint's allegations that Feliciano-Hernández took steps while in prison to rehabilitate himself because they are not material to the ultimate issues in this case. We focus on the allegations which are pertinent to whether the individual defendants were ever given or put on adequate notice of the claims that Feliciano-Hernández must be released under the terms of his original sentence, so as to support

a § 1983 claim of deliberate indifference to a violation of constitutional rights.

After his minimum sentence was completed in 1993, the Parole Board reviewed Feliciano-Hernández's case annually, and each year it denied his request for parole. The complaint alleges that each year the Parole Board did not "notify the Administration of Correction of the nature of the plaintiff's sentence and of his rights to be released from imprisonment." Feliciano-Hernández does not claim that he personally provided the Department of Corrections or any particular official with such notice. In 1996 he was reclassified to minimal custody status, which he maintained until his release.

In 1998, Feliciano-Hernández filed a pro se pleading with a Puerto Rico court requesting a writ of habeas corpus to secure his release. The court entered an order on June 23, 1998, requiring the Department of Corrections to explain the reasons for Feliciano-Hernández's continued incarceration in light of the April 14, 1981 judgment. The Department of Corrections opposed the habeas petition and informed the court that Feliciano-Hernández's case was before the Parole Board. The court denied the request for habeas relief.

On August 16, 1998, the Parole Board again denied Feliciano-Hernández's request for parole and again did not give the

Department of Corrections notice of the nature of his sentence and his right to be released.

The complaint alleges, without subsidiary factual support, that during 2003 and 2004 unnamed employees of the Department of Corrections informed their unnamed supervisors of Feliciano-Hernández's unlawful incarceration and noted specifically that he had been imprisoned in excess of twenty-two years, he had been in "minimum custody" for eight years, he did not require further therapy, and his work was uninterrupted and satisfactory. There is no allegation that any of the individual named or "John Poe" defendants were so notified and there are no supporting facts as to any such notice.

Feliciano-Hernández alleges that the Department of Corrections' records indicated that he was imprisoned for rape or attempted rape, which adversely affected his evaluations, rights, and privileges during his incarceration. While he did have prior convictions for those crimes, which led to his categorization as a habitual offender, the offenses for which he was sentenced in 1981 did not themselves include rape or attempted rape. To address this mischaracterization issue, in 2005 Feliciano-Hernández initiated pro se mandamus proceedings in the Puerto Rico Court of First Instance, moving the court to order the Department of Corrections to correct its records to show Feliciano-Hernández was not incarcerated for rape or attempted rape. The court granted the

petition and so ordered. There is no allegation that the Department of Corrections failed to comply with the court order. Nor is there any allegation that Feliciano-Hernández sought as relief release from prison or asserted any constitutional claim. In his federal complaint, Feliciano-Hernández alleges, without further support, that the Department of Corrections "nevertheless" continued to deny him his rights and privileges under the reasoning that he had been sentenced to "perpetual imprisonment."

Feliciano-Hernández filed a petition for habeas corpus with the Puerto Rico Court of First Instance in Mayagüez on May 29, 2007.[1] That petition also did not assert any constitutional claim. Instead, it evidently claimed that Feliciano-Hernández had been rehabilitated and that annual evaluations of his progress toward rehabilitation had never taken place. On April 25, 2008, the court, after hearing testimony, accepted the recommendation of counsel and of "the Public Ministry" that Feliciano-Hernández be transferred to a halfway house within thirty days, that he remain there for no less than six months and no longer than a year, and that he be referred to the Pre-Release Services to assist him with reintegration into the community. He was also ordered to register with the Sexual Offender Registry and to complete special therapies for sexual offenders offered by the Department. On June 24, 2008,

---

[1] He was represented by counsel from an organization which has provided legal services to Puerto Rico prisoners since the mid-1990s.

by separate order, the Department was ordered to immediately release Feliciano-Hernández.

II.

On June 23, 2009, Feliciano-Hernández filed his complaint in federal district court. The complaint's § 1983 claims are premised on a theory of supervisory liability and allege violations of the Eighth Amendment's prohibition of cruel and unusual punishment and of the Fifth and Fourteenth Amendments' Due Process Clauses. This is the first time these defendants[2] have ever had any federal constitutional claims asserted against them by the plaintiff. The complaint also includes supplemental claims under Puerto Rico law, which were dismissed without prejudice.

On September 23, 2009, former Secretary Laboy-Alvarado filed a motion to dismiss pursuant to Rule 12(b)(6). She raised six arguments in the motion: Feliciano-Hernández's claims were time-barred; the official capacity claims were barred by the Eleventh Amendment; the Fifth Amendment claims were inapplicable to

---

[2] The complaint contains allegations against five named and five unnamed defendants. The named defendants are former secretaries of the Department of Corrections: Miguel A. Pereira-Castillo for events that took place on or before June 24, 2008; Victor M. Rivera-González for January 2001 through December 2002; Zoé M. Laboy-Alvarado for September 1998 through December 2000; Nydia M. Cotto-Vives for January 1997 through June 1998; and Joseph Colón-Morales from December 1994 through December 1996. The complaint also includes as defendants the named defendants' spouses and conjugal partnerships. The unnamed "John Poe" defendants are "Department of Corrections and Rehabilitations Facilities" superintendents who were in charge of the different Department of Corrections facilities where Feliciano-Hernández was confined.

her as a state actor; abstention, under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), was required; she was entitled to qualified immunity; and the supplemental claims under Puerto Rico law should be dismissed as well. Feliciano-Hernández filed an opposition to the motion to dismiss on October 6, 2009.

On October 9, 2009, defendant Rivera-González answered the complaint, asserting as an affirmative defense that the complaint did not state a claim upon which relief could be granted, that the complaint failed to state specific acts on Rivera-González's part that could amount to a violation of Feliciano-Hernández's rights, and that Rivera-González was not personally involved in any alleged violation of Feliciano-Hernández's rights. The plaintiff did not file any response to Rivera-González's answer.[3]

On August 24, 2010, the district court entered an opinion and order in which it dismissed the complaint as to all of the defendants for failure to state a claim. Feliciano Hernández, 2010 WL 3372527, at *12. It did not reach Laboy-Alvarado's other arguments for dismissing the complaint. As said, the district

---

[3] As to the other named defendants, the district court entered default against Pereira-Castillo on October 8, 2009, and against Cotto-Vives and Colón-Morales on June 23, 2010, but later entered judgment for all defendants. Feliciano-Hernández never identified any of the unnamed "John Poe" defendants, although the names of the Superintendents of particular correctional institutions were most likely publicly available.

court dismissed the federal claims with prejudice and dismissed the Puerto Rico law claims without prejudice. Id. That same day the court entered final judgment in the case.

Roughly two weeks later, Feliciano-Hernández filed a motion for reconsideration and for leave to file an amended complaint on September 6, 2010, and tendered his amended complaint that same day without having been given leave to do so. The amended complaint was tendered almost a year after Laboy-Alvarado filed her motion to dismiss. The district court granted Laboy-Alvarado and Rivera-González's joint motion to strike the amended complaint on September 16, 2010. On December 8, 2010, it entered an opinion and order denying Feliciano-Hernández's motion for reconsideration. Feliciano Hernández, 2010 WL 5072567. This timely appeal followed.

III.

Feliciano-Hernández appeals both the district court's dismissal of his complaint and its denial of his motion for reconsideration and for leave to file an amended complaint. We address each issue in turn.

A. Dismissal of the complaint

We review de novo the grant of a motion to dismiss under Rule 12(b)(6), "accepting as true all well-pleaded facts, analyzing those facts in the light most hospitable to the plaintiff's theory, and drawing all reasonable inferences for the plaintiff." New York

v. Amgen Inc., 652 F.3d 103, 109 (1st Cir. 2011) (quoting United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011)).

We review the dismissal of the complaint in the context of the defendants' assertion of their entitlement to qualified immunity and to dismissal under the Supreme Court's decision in Iqbal. The defendants are entitled to qualified immunity unless (1) "the facts alleged or shown by the plaintiff make out a violation of a constitutional right" and (2) such right was "'clearly established' at the time of the defendant[s'] alleged violation[s]." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (quoting Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)). "A right is clearly established only if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011) (quoting Brosseau v. Haugen, 543 U.S. 194, 199 (2004)). Qualified immunity "provides defendant public officials an immunity from suit and not a mere defense to liability." Maldonado, 568 F.3d at 268.

The first prong of the immunity analysis requires that a plaintiff state a claim of violation of a constitutional right. Id. at 269. In determining whether such a claim has been stated under Iqbal, we first recognize that "the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 557).

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Id. (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Feliciano-Hernández's complaint fails under Iqbal to plead adequately that the individual defendants violated his constitutional rights and so fails the first prong of the qualified immunity analysis. As such, he necessarily fails the second prong as well: an objectively reasonable public official situated as defendants would not be on notice of violations of any constitutional rights.

The named defendants are very high-level officials, each of whom, as Secretary of the Department of Corrections, had vast responsibilities. The Secretary oversees many correctional institutions, hundreds of employees, and thousands of prisoners. For example, in 2000, the system-wide prison population was approximately 16,000. Morales Feliciano v. Roselló González, Civ. No. 79-4, slip op. at 103 (D.P.R. Jan. 25, 2000). There are prison complexes in, among other places, Bayamón, Vega Alta, Guayama, and Ponce. See Morales Feliciano v. Acevedo Vila, Civ. No. 79-4, 2007 WL 4404730, at *4 (D.P.R. Dec. 13, 2007); see also Morales Feliciano v. Romero Barcelo, 672 F. Supp. 591, 595 (D.P.R. 1986) (in 1986, the Department of Corrections administered institutions at San Juan, Río Piedras, Bayamón, Arecibo, Aguadilla, Ponce, Guayama, Humacao, Vega Alta, and Miramar, in addition to agricultural camps and halfway houses). The unnamed "John Poe" defendants are also high-level officials, being directors of individual correctional facilities.

The Supreme Court has held that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 129 S. Ct. 1948. "[A] supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an 'affirmative link between the behavior of a subordinate and the action or inaction of his supervisor . . . such

that the supervisor's conduct led inexorably to the constitutional violation.'" Soto-Torres, 654 F.3d at 158 (omission in original) (quoting Maldonado, 568 F.3d at 275). Additionally, "the plaintiff must show that the official had actual or constructive notice of the constitutional violation." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 768 (1st Cir. 2010), cert. denied, 131 S. Ct. 1016 (2011) (quoting Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007)) (internal quotation marks omitted).

The complaint sets forth a series of conclusions. It alleges that "[i]n keeping the plaintiff confined beyond the term of his sentence, each defendant acted with deliberate indifference and/or reckless disregard of the plaintiff's Eighth Amendment rights and due process of law" and that "[e]ach defendant[] unjustifiabl[y] deprived plaintiff of liberty in violation of his Eighth Amendment rights and due process of law."[4] The complaint states as to each of the former-Secretary defendants that he or she "is being sued on the basis of his [or her] deliberate indifference and/or reckless disregard" of the plaintiff's rights. It alleges among other conclusions that the defendants "failed in their duty to assure adequate monitoring, disciplining, evaluating, training

[4] To resolve this case, we need not detail the substantive law under these asserted constitutional rights. We do, however, agree with the district court that it is "highly doubtful that Plaintiff would be able to state a plausible Eighth Amendment violation" against any of the defendants. Feliciano Hernández v. Pereira Castillo, Civ. No. 09-1569, 2010 WL 3372527, at *11 (D.P.R. Aug. 24, 2010).

and supervising any and all personnel under their charge, to assure that all inmates were properly classified and released upon completion of their sentence." It relatedly alleges that "[h]ad the defendants complied with their supervisory duties, they would have identified those employees that did not properly register the plaintiff's classification and inaccurately categorized the crimes for which he had been sentenced." None of these conclusory allegations suffice to establish a claim.

These are exactly the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that both we and the Supreme Court have found insufficient. Iqbal, 129 S. Ct. at 1949. Indeed, in Sanchez v. Pereira-Castillo, 590 F.3d 31 (1st Cir. 2009), we held that such allegations failed to state a claim against Puerto Rico administrative correctional defendants, most of whom were at a lower level than the Secretary. We dismissed the claims against those defendants because they did "little more than assert a legal conclusion about the involvement of the administrative correctional defendants in the underlying constitutional violation" and simply "[p]arrot[ed] our standard for supervisory liability in the context of Section 1983." Id. at 49.

In other cases after Iqbal, we have repeatedly held that similarly broad allegations against high-ranking government officials fail to state a claim. See Soto-Torres, 654 F.3d at 160 (allegations against FBI Special Agent in Charge of field office

insufficient under Iqbal because complaint failed to allege facts showing defendant had knowledge of alleged violations of constitutional rights); Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011) (Regional Medical Director of Correctional Medical Services in Maine cannot be held responsible for the conduct of his subordinates under a theory of respondeat superior); Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (allegations against governor insufficient under Iqbal because complaint failed to allege facts showing governor participated in violation of constitutional rights); Maldonado, 568 F.3d at 274-75 (allegations against mayor insufficient under Iqbal because complaint failed to allege facts showing an "affirmative link" between mayor and alleged violations of constitutional rights).

There are a number of other specific deficiencies in the complaint. We start (and end) with the failure to plead that any of the named defendants, each a former Secretary of the Department of Corrections, had any individual notice that plaintiff's incarceration beyond 1993 was a violation of his constitutional rights, much less that there was an affirmative link to them or that they were deliberately indifferent to those notices of alleged violations of his rights. Actual or constructive knowledge of a rights violation is a prerequisite for stating any claim. See Rodríguez-García, 495 F.3d at 768; Lipsett v. Univ. of P.R., 864

F.2d 881, 902 (1st Cir. 1988) ("An important factor in making the determination of liability is whether the official was put on some kind of notice of the alleged violations, for one cannot make a 'deliberate' or 'conscious' choice to act or not to act unless confronted with a problem that requires the taking of affirmative steps." (citation omitted) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986))).

There are two main strands to Feliciano-Hernández's allegations that the individual Secretaries were on notice of his allegedly unconstitutional confinement and a constitutional imperative to release him. The first is his general allegation that "[d]uring 2003 and 2004, Department of Corrections[] employees informed their supervisors of the plaintiff's unlawful incarceration." This allegation fails to state who these "employees" were, what the information was, who the "supervisors" were to whom these employees made such a report, and whether and how such information made it to the defendants, or why his confinement violated constitutional requirements as opposed to any claims under state law. It fails under Iqbal.

The second strand is focused on the notice purportedly given to the named defendants by various court proceedings, some involving plaintiff personally and some not. As to the latter, Feliciano-Hernández argues that Laboy-Alvarado was put on notice of the alleged violations of his rights by an unrelated case in which

the district court had held that Laboy-Alvarado had been aware of other constitutional deficiencies in the Puerto Rico prison system, including those related to the classification of inmates. See Morales Feliciano, Civ. No. 79-4 (D.P.R. Jan. 25, 2000). That case concerned prison conditions, such as health care, use of force, security, inmate supervision, and sanitation. Id. at 1. The allegations plaintiff makes here regarding incarceration allegedly beyond a period when release was required by state law were not at issue in that case. Further, the portion of Morales Feliciano that dealt with "classification" had to do with classifying inmates according to their "propensity for violence as well as [their] emotional and physical health," id. at 91, pursuant to Puerto Rico law, see P.R. Laws Ann. tit. 4, § 1121. That law does not impose any specific duties on the Secretary. Morales Feliciano had nothing to do with classifying inmates as eligible for release from a perpetual sentence upon their rehabilitation. Nothing in Morales Feliciano put Laboy-Alvarado or any other defendant on notice of any purported violation of plaintiff's constitutional rights as alleged here.

As to the Puerto Rico court proceedings involving him, Feliciano-Hernández relies first on his 1998 pro se habeas petition and second on a 2005 mandamus proceeding. Some of the named defendants were not even in office at the time of the filings in 1998 and 2005 and so could not plausibly have been put on notice.

The only named defendants in office during the course of the 1998 habeas proceedings were Cotto-Vives and Laboy-Alvarado. The only named defendant in office at the time of the 2005 mandamus proceeding was Pereira-Castillo. The plaintiff could not plead facts showing these proceedings gave individual notice of his allegations to the defendants who held office before the proceedings even commenced, and he makes no attempt to plead facts showing they put on individual notice the defendants who took office after these proceedings concluded. Feliciano-Hernández's complaint contains no allegation that any defendant was put on notice of alleged violations of constitutional rights by the 1998 habeas petition or by any of the other court proceedings the complaint describes.

Nor did Feliciano-Hernández make any such argument in his opposition to Laboy-Alvarado's motion to dismiss, so he has waived the argument. Not until his motion for reconsideration and his amended complaint -- both filed after the district court entered judgment dismissing the complaint -- did Feliciano-Hernández allege, even then insufficiently, that the 1998 habeas action put Laboy-Alvarado on notice of the violations of his rights alleged here. Even if the argument were not waived, as it has been, it would fail.

The complaint fails to connect any of the named or "John Poe" defendants to either the 1998 habeas proceeding or the 2005

mandamus proceeding and makes no allegation that either proceeding put any of the defendants on notice that Feliciano-Hernández's constitutional rights were, as alleged here, being violated.

Iqbal requires dismissal here. In Iqbal, the plaintiff alleged that Attorney General Ashcroft and FBI Director Mueller "knew of, condoned, and . . . agreed to subject" the plaintiff to harsh conditions of confinement. 129 S. Ct. at 1951. The Supreme Court deemed those similarly bare allegations to be too conclusory to be "entitled to the assumption of truth." Id.

Even beyond failing to show notice to the individual defendants, the complaint fails on other grounds. Feliciano-Hernández "would still have to go further, for 'not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it.'" Feliciano Hernández, 2010 WL 3372527, at *11 (quoting Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993)). The complaint contains no factual allegations to support even a minimal showing of deliberate indifference.

B. The denial of plaintiff's motion to reconsider

We review the district court's denial of Feliciano-Hernández's motion for reconsideration for abuse of discretion. See Meléndez-García v. Sánchez, 629 F.3d 25, 34 (1st Cir. 2010); see also ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (2008) ("District courts enjoy considerable discretion in deciding Rule 59(e) motions, subject to circumstances developed in the case

law."). Feliciano-Hernández's motion states it is "pursuant to Rules 52(b) and 59(a)." Rule 52(b) provides for a motion to amend or make additional findings; Rule 59(a) provides for a motion for a new trial or further action after a non-jury trial. See Fed. R. Civ. P. 52(b), 59(a). On appeal, Feliciano-Hernández states that his motion was actually under Rule 59(e), and that "Rule 59(a)" in his papers is a typographical error. Regardless of which Rule of Civil Procedure plaintiff intended to move under, it is clear from the district court's December 8, 2010 opinion and order denying the motion that the court considered Feliciano-Hernández's arguments both for amending the August 24, 2010 opinion's findings and for reconsidering the conclusion of that opinion. "Because of the close relationship between Rule 59(e) and Rule 52(b), we do not think that it is of dispositive significance that the district court relied on 52(b) rather than 59(e)." Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 122 (1st Cir. 1990).

The motion for reconsideration argued that the dismissal order was based on inaccurate facts and was erroneous as to Laboy-Alvarado and improperly sua sponte as to the other defendants.[5]

[5] The district court rejected this "sua sponte" argument because it had "no doubt that Plaintiff understood that his complaint could be dismissed due to his failure to adequately adduce that the Defendants met the requirements for liability under Section 1983" and any doubt was "further eliminated by Feliciano's inability to demonstrate that Defendants were liable under Section 1983 in his motion for reconsideration." Feliciano Hernández v.

The district court did not abuse its discretion in denying the motion to reconsider. The factual allegations that Feliciano-Hernández argues were not considered by the district court are either legal conclusions couched as facts or are facts that the court did indeed include in its opinion. The court was also acting within its discretion in refusing to reconsider arguments that the plaintiff had already made or to consider new arguments that he could have made earlier. A motion to reconsider should not "raise arguments which could, and should, have been made before judgment issued." ACA, 512 F.3d at 55 (quoting FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992)) (internal quotation marks omitted); see also Wright & Miller, Federal

---

Pereira Castillo, Civ. No. 09-1569, 2010 WL 5072567, at *4 (D.P.R. Dec. 8, 2010). On appeal, plaintiff failed to develop an argument in his opening brief that the district court was wrong as a matter of law or abused its discretion as to this issue. Any argument that the district court improperly dismissed the complaint sua sponte is therefore waived. See Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 43-44 (1st Cir. 2010) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")).

Even if plaintiff's sua sponte dismissal argument had not been waived, the district court had the power to dismiss the complaint as to Pereira-Castillo, Cotto-Vives, and Colón-Morales, after it entered default against them, because they were in a similar (or better) posture than the responding defendants as to the allegations of the complain. Further, a district court may, after entry of default, still conclude that a complaint fails to state a claim. See Ramos-Falcón v. Autoridad de Energía Eléctrica, 301 F.3d 1, 2 (1st Cir. 2002) (per curiam) (after entry of a default judgment, the district court "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action").

Practice and Procedure § 2810.1 (2d ed. 2011) ("The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." (footnotes omitted)).

The motion also requested that the court allow Feliciano-Hernández to file an amended complaint, to which we now turn.

C. The denial of plaintiff's motion to file an amended complaint

Feliciano-Hernández argues that the district court should have allowed him to belatedly amend his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Feliciano-Hernández is incorrect for a number of reasons: (1) the court lacked authority to accept a post-judgment amendment; (2) the amended complaint was untimely, coming after the court granted a motion to dismiss filed a year earlier; (3) the Puerto Rico court documents attached to the amended complaint reinforce that plaintiff failed to state a claim.

Feliciano-Hernández requested leave to file his amended complaint on September 6, 2010, after the district court had already entered final judgment on August 24, 2010, dismissing the complaint, and almost a full year after Laboy-Alvarado filed her motion to dismiss.

The law in this circuit is clear that a district court may not accept an amended complaint after judgment has entered

unless and until the judgment is set aside or vacated under Rules 59 or 60, and the district court here denied the motion to vacate the judgment. See Fisher v. Kadant, Inc., 589 F.3d 505, 509 (1st Cir. 2009) (describing as "black-letter law" the rule that "[u]nless postjudgment relief has been granted, the district court lacks power to grant a motion to amend the complaint under Rule 15(a)" (quoting Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 389 (1st Cir. 1994))).

Independently, the district court acted within its discretion in denying plaintiff leave to file an amended complaint first made after it entered its dismissal order. "[T]he district court enjoys significant latitude in deciding whether to grant leave to amend," and "[w]e defer to the district court's decision 'if any adequate reason for the denial is apparent on the record.'" ACA, 512 F.3d at 55 (quoting LaRocca v. Borden, Inc., 276 F.3d 22, 32 n.9 (1st Cir. 2002)). Among the grounds for denial are "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [and] futility of amendment." Id. (alteration and omissions in original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)) (internal quotation marks omitted). The district court had good reason for disallowing filing the amended complaint: it was far too late. It was also futile, as we explain below.

The complaint was first filed on June 23, 2009. Laboy-Alvarado filed a motion to dismiss on September 23, 2009, and Rivera-González answered the complaint on October 9, 2009. Feliciano-Hernández could have moved to amend then, but did not. Instead, plaintiff waited to move to amend until September 6, 2010, nearly a year after the motion to dismiss was filed, and after the court had dismissed the case. We have stated that "[r]egardless of the context, the longer a plaintiff delays, the more likely [a] motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Id. (alterations in original) (quoting Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004)) (internal quotation marks omitted).

Furthermore, we agree with the district court's determination that the amended complaint would not have altered its conclusions and so was futile. As the district court stated in the course of ruling that it would not reconsider its judgment, the plaintiff was unable "to demonstrate that Defendants were liable under Section 1983 in his motion for reconsideration," to which his amended complaint was attached. Feliciano Hernández, 2010 WL 5072567, at *4.

The amended complaint contained several attachments purportedly "obtained during discovery, and as result of

investigation." These attachments, which were filed with the district court in Spanish in violation of the local rules, are largely those court filings and related publicly available documents which were referred to in the original complaint but not then provided. The failure to provide English translations of the documents also doomed the amended complaint.[6]

Turning to the content of the amended complaint, it again makes conclusory allegations that the individual defendants must have had knowledge of each of Feliciano-Hernández's Puerto Rico court filings, but, with one exception, it fails to provide facts as to why this would be so. The defendants were high-level officials in charge of institutions holding thousands of inmates, the running of a number of different facilities, and the employment of numerous personnel. Some defendants were not even in office at the time of the filings in 1998 and 2005.

The amended complaint contains just the type of allegations that are so "speculative that they fail to cross 'the line between the conclusory and the factual'" and so must be

---

[6] The local rules of the District of Puerto Rico and a federal statute require federal litigation in Puerto Rico to be conducted in English. See D.P.R. Civ. R. 5(g); 48 U.S.C. § 864; Estades-Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 2 (1st Cir. 2004) (per curiam) ("The law incontrovertibly demands that federal litigation in Puerto Rico be conducted in English."). Only on appeal did plaintiff provide English translations of these documents. "However, translation after the fact cannot retrospectively alter the record." Estades-Negroni, 359 F.3d at 2.

disregarded. Peñalbert-Rosa, 631 F.3d at 595 (quoting Twombly, 550 U.S. at 557 n.5).

The amended complaint does allege that Feliciano-Hernández's 1998 pro se habeas petition put Secretary Laboy-Alvarado on notice of the alleged violations of his rights.[7] The English translations of the Spanish-language documents filed with this court establish otherwise: even if Laboy-Alvarado had been personally served the petition, which was evidently concerned only with Puerto Rico law, it would not have put her on notice of any claimed constitutional violations. Further, the decision of the Puerto Rico court denying habeas would have informed Laboy-Alvarado, contrary to plaintiff's theory, that there was no violation of law in his continued confinement because it was an appropriate matter for the Parole Board which had justifiably denied relief.

As to notice of that decision, the decision and order of the Puerto Rico Court of First Instance dated June 3, 1998, and captioned "The People of Puerto Rico vs. Angel L. Feliciano Hernandez" directed that the order and the petition for habeas corpus and its attachments be "notified to the Department of Justice, to the Legal Division of the Correction Administration and

[7] The amended complaint pleads that Laboy-Alvarado was Secretary of the Department of Corrections from September 1998 through December 2000, and further pleads that from March 11, 1997, to June 30, 1998, she occupied the position of Corrections Administrator.

also to its administrator." But the Department of Correction's response indicated that Feliciano-Hernández did not fully comply with the order.

In response to the June 3, 1998 court order, an attorney at the Ponce Correctional Complex filed an informative motion, stating that the Department of Corrections had not received a copy of the petition and did not know about its content. The informative motion also stated that Feliciano-Hernández was referred to the Parole Board once he served his minimum sentence, that the Parole Board had denied him the privilege of release, and it attached the last two resolutions of the Parole Board. Those documents from the Parole Board show that in 1997 the Board denied parole, stating that Feliciano-Hernández had not submitted a required alternate housing plan or a structured exit plan, that because of the length of his sentence the Board wanted additional time to review his adjustment, and concluded he was not prepared at that time for parole. The Parole Board said he would be reviewed the next year and required reports be submitted to it by the Department of Corrections.

The June 30, 1998 judgment of the Court of First Instance denied the habeas petition on the grounds that Feliciano-Hernández "has available the administrative ordinary and appellate proceedings (before the Parole Board)" and the Board had not released him. The court directed that its order be "entered and

notified to the parties and the Secretary of the Department of Rehabilitation and Correction."

Even if plaintiff could sufficiently allege that the June 30, 1998, judgment reached the desk of Laboy-Alvarado, all that judgment would have lead a reasonable administrator to conclude was that there was no error in the Parole Board's being the appropriate vehicle for accomplishing a prisoner's release on rehabilitation under such sentences and that there had been no procedural or substantive violations of law in not releasing a prisoner when the Parole Board had not allowed his release. Under no reasonable interpretation could the June 30, 1998 judgment be seen as notice to Laboy-Alvarado that plaintiff's constitutional rights were being violated. The judgment was to the contrary and so undercuts the allegations of notice of any constitutional violation, much less deliberate indifference.

As to the 2005 action, it was, as stated by the Puerto Rico Court of First Instance, an action for mandamus, not a petition for habeas corpus, and it did not seek Feliciano-Hernández's release. The Department of Corrections was the respondent, not any of the individual defendants here. The Department of Corrections was ordered to correct the petitioner's file "to reflect the reality of his penal convictions. The Petitioner must notify the court of any deviation to the Order entered herein." There is no claim that the Department of

Corrections did not comply or that Feliciano-Hernández ever notified the court of any deviation. Nor does plaintiff plead any facts showing that any of the defendants here individually knew of the 2005 mandamus proceeding or its outcome. Plaintiff has pled that only Pereira-Castillo was in office at that time.

Finally, Feliciano-Hernández has not alleged that his 2007 petition for habeas corpus or the Puerto Rico court orders in that case put any of the defendants on notice that his constitutional rights were being violated. Again, only Pereira-Castillo was in office when the April 25, 2008, order was issued. That order states that under Puerto Rico law as it stood at the time Feliciano-Hernández was sentenced, the court understood that "annual evaluations of the petitioner should have taken place in order to determine when the imposed security measure would cease, but this was not done." (Citing P.R. Laws Ann. tit. 33, § 3391). Contrary to plaintiff's characterization of the order in the amended complaint, the court did not state that the Department of Corrections had failed to comply with any duty, and the court certainly did not state that any of the individual defendants here did not comply with any duty.

After hearing testimony, the court accepted the recommendation of counsel and of "the Public Ministry" that Feliciano-Hernández be transferred to a halfway house within thirty days, that he remain there for no less than six months and no

longer than a year, and that he be referred to the Pre-Release Services to assist him with reintegration into the community. He was also ordered to register with the Sexual Offender Registry and to complete special therapies for sexual offenders offered by the Department. On June 24, 2008, by separate order, the Department was ordered to immediately release Feliciano-Hernández.

The order does not state that Feliciano-Hernández's rights under the U.S. Constitution were violated, that the Department of Corrections had violated any constitutional rights, or that any of the defendants in this case violated his constitutional rights or knew or should have known his rights were being violated. None of the defendants in this case were parties to the 2008 habeas proceedings, and there is no allegation that any of them were even notified of the proceedings.

Feliciano-Hernández makes an argument on appeal never made to the district court. He has shifted his theory of the case to an argument that Articles 75 and 76 of the Puerto Rico Penal Code -- as those provisions read when he was sentenced in 1981 -- imposed a duty upon the unnamed defendant superintendents of the institutions in which he was incarcerated from 1993 to 2008 to provide the court with yearly reports on his rehabilitation process. This argument was available to plaintiff at the time he filed his complaint, but was not made. He did not make the argument to the district court until his motion for reconsideration

and for leave to file an amended complaint, and then in only a cursory fashion. So it is doubly waived.

Even so, the argument again provides no support for his claim of constitutional violation by the defendants. It is not clear whether Article 75, which was repealed in 2005, applied after the date of repeal. Article 75 by its terms imposed a duty on the court,[8] and while the court could obtain a report from the director of the establishment of confinement,[9] it is far from clear under Puerto Rico law that the director had a statutory duty to produce annual reports absent a request from the courts.

Nor is it clear that the mechanism for annual review concerning release did not include the Parole Board, and the plaintiff has offered no citations to Puerto Rico law to the contrary. In fact, the Parole Board is to consider the prisoner's

---

[8] As it read at the time of plaintiff's conviction, Article 75 stated that "[t]he court shall annually advise as to the maintenance, modification or termination of the security measure imposed . . . . In the case of a habitual criminal, the review shall not take place until the minimum term of the security measure imposed has elapsed." P.R. Laws Ann. tit. 33, § 3391 (West 1988) (repealed 2005). A 1988 amendment deleted the reference to habitual criminals.

[9] As it read at the time of plaintiff's conviction, subsection (b) of Article 76 stated that for the purposes of Article 75, "[i]n the case of security measures for habitual criminal it shall be necessary to have . . . a report from the director of the establishment where the convict is serving the security measure." P.R. Laws Ann. tit. 33, § 3392(b) (West 1988) (repealed 2005). A 1988 amendment deleted this subsection.

rehabilitation among other factors in determining whether to grant parole. See P.R. Laws Ann. tit. 4, § 1503.

Regardless of any purported duty on the "directors," the named former-Secretary defendants cannot be held liable under § 1983 for the supposed omissions of their subordinates. "In a § 1983 suit . . . each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 129 S. Ct. at 1949. Moreover, the plaintiff does not allege any facts that would have put either the named or the unnamed defendants on individual notice that his incarceration was not being reviewed annually as required by law.

Even had the argument under Articles 75 and 76 not been waived, its consideration would not have altered the outcome of dismissal under Iqbal. Rather, it would have enhanced defendants' claims for dismissal. We also add that even were there some violations by someone of duties under Puerto Rico law, that still does not suffice to establish a violation of federal constitutional rights. Berríos-Romero v. Estado Libre Asociado de P.R., 641 F.3d 24, 25-26 (1st Cir. 2011).

IV.

That plaintiff has failed to state a federal claim in this case does not mean he has no claims under Puerto Rico law. The district court dismissed those claims without prejudice.

We affirm. No costs are awarded.