**Dr. Robert C. DAY, et al., Plaintiffs,**

v.

**FALLON COMMUNITY HEALTH PLAN, INC., et al., Defendants.**

**Civil Action No. 94–40148–NMG.**

United States District Court, D. Massachusetts.

Feb. 21, 1996.

Jeffrey S. Raphaelson, Raphaelson & Raphaelson, Worcester, MA, William E. Weber, Weber, Waxman & Brown, Hauppauge, NY, for Plaintiffs.

Thomas I. Elkind, Epstein, Becker & Green, P.C., Boston, MA, Daly D.E. Temchine, William G. Kopit, Epstein, Becker & Green, P.C., Washington, DC, for Fallon Community HEA.

Robert M. Buchanan, Jr., Sarah C. Columbia, James Roosevelt, Jr., Jeffrey A. Levinson, Choate, Hall & Stewart, Boston, MA, for Kaiser Foundation and Harvard Community Health Plan, Harvard Community Health Plan of New England, Inc., U.S. Healthcare. U.S., Stacy Lundin, M.D., Marshall V. Rozzi, M.D. and Manuel Ferris, M.D.

Thane D. Scott, Michael T. Gass, Palmer & Dodge, Boston, MA, for Bay State Health Care, Inc., Pilgrim Health Care, Michael Kaufman, M.D., Samuel Nussbaum, M.D.

Mark E. Cohen, Stephen D. Rosenberg, McCormack & Epstein, Boston, MA, for Central Massachusetts Health Care, Richard E. Myer, M.D.

Philip A. Proger, Kevin D. McDonald, Jones, Day, Reabis & Pogue, Washington, DC, for CIGNA Healthcare.

Neil P. Motenko, Nutter, McClennen & Fish, Boston, MA, for Community Health PLA.

Francis D. Dibble, Jr., Kevin C. Maynard, Bulkley, Richardson & Gelinas, Springfield, MA, for Health New England, Inc.

Joseph D. Halpern, Blue Cross and Blue Shield of Mass., Boston, MA, for HMO Blue, Inc., Seth Blumberg, M.D.

Steven E. Snow, Partridge, Snow & Hahn, Providence, RI, for HMO Rhode Island.

James S. Franchek, Kevin Hern, Jr., Riemer & Braunstein, Boston, MA, Frank E. Reardon, Hassan & Reardon, Boston, MA, for Matthew Thorton Health Plan, Jon Vore, M.D.

William N. Berkowitz, Charles L. Janes, Charles L. Solomont, Bingham, Dana & Gould, Boston, MA, for Metlife Health Care.

Susan Hughes Banning, Hemenway & Barnes, Boston, MA, for Neighborhood Health.

Thomas I. Elkind, Epstein, Becker & Green, P.C., Boston, MA, William G. Kopit, Epstein, Becker & Green, P.C., Washington, DC, for Prucare of Mass., Ernest Bourass, M.D., Joel Kaufman, M.D., Fallon Clinic, Inc., Morris Spierer, M.D.

Steven W. Kasten, Boston, MA, Donald R. Frederico, McDermott, Will & Emory, Boston, MA, for Tufts Associated Health Plan, Joseph Gerstein, M.D.

Amy K. Posner, Metropolitan Life Insurance Company, New York City, for William T. Friedewald, M.D.

Francis D. Dibble, Jr., Buckley, Richardson & Gelinas, Springfield, MA, for Donald P. Burt, M.D.

William E. Weber, Weber, Waxman & Brown, Hauppauge, NY, for Mark A. Davini.

## MEMORANDUM AND ORDER

GORTON, District Judge.

This antitrust class action suit was brought by the plaintiffs against 21 health maintenance organizations ("HMOs") and their medical directors. Pending before this Court is a joint motion by defendants to dismiss the plaintiffs' second amended Complaint. For the reasons stated below, the defendants' motion will be allowed.

### I. BACKGROUND

Two classes of plaintiffs have joined together in filing the instant action. The first class consists of chiropractic physicians licensed to practice in Massachusetts. The second class consists of individual enrollees who are provided health insurance under plans purchased from one of the defendant HMOs. The Complaint, which has been twice amended since the suit was originally filed, arises out of the contention that, even

where chiropractic care is more cost-effective than medical care, the defendant HMOs have limited the ability of their enrollees to obtain chiropractic services.

More specifically, the defendants' conduct is said to violate the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, and its Massachusetts counterpart, M.G.L. c. 93, §§ 4, 5 and 12. The Complaint alleges, in three separate counts, that there are: (1) combinations within each defendant HMO to limit enrollee access to chiropractic care in restraint of trade, (2) combinations between an unspecified number of defendant HMOs to tolerate those "intra-HMO" conspiracies in restraint of trade, and (3) combinations within each defendant HMO to monopolize the provision of health care services.

## II. LEGAL ANALYSIS

The defendants filed this joint motion to dismiss each count of the Complaint pursuant to Fed.R.Civ.P. 12. They argue multiple grounds for dismissal, including failure to state a claim upon which relief can be granted, exemption under the McCarran–Ferguson Act, 15 U.S.C. §§ 1012–13 (1988), and lack of standing. Because this Court decides the motion on the first of defendants' stated grounds for dismissal, it does not consider the remaining grounds but proceeds under the standards governing a Rule 12(b)(6) motion.

### A. Standards Governing 12(b)(6) Motions

In ruling upon a 12(b)(6) motion, the Court must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993). This Court neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims. If the allegations in the Complaint are sufficient to state a cause of action in accordance with the law under any theory, the Court must deny the motion to dismiss. *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir.1994).

Despite this highly deferential standard, the Court will not accept any unsupported conclusions or interpretations of law. *Washington Legal Foundation*, 993 F.2d at 971. As the First Circuit Court of Appeals

has stated, "[I]n the menagerie of the Civil Rules, the tiger patrolling the courthouse gates is rather tame, but 'not entirely ... toothless.'" *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990) (citations omitted). This Court is obliged neither to "credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation", *Id.*, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions. *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). This Court is thus mindful that it must carefully balance the rule of simplified civil pleading against the need for more than conclusory allegations. *Washington Legal Foundation*, 993 F.2d at 971.

In attempting to distinguish that "often blurred" line between sufficient facts and insufficient conclusions, this Court is guided by the "general parameters" set out in *Dartmouth Review*, 889 F.2d at 16:

> Most often, facts are susceptible to objective verification. Conclusions, on the other hand, are empirically unverifiable in the usual case. They represent the pleader's reactions to, sometimes called "inferences from", the underlying facts. It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that "conclusions" become "facts" for pleading purposes.

Furthermore, the Court notes that it is the plaintiff's burden to make sufficient factual allegations in order to survive a Rule 12(b)(6) motion. This Court need not "conjure up unpled allegations or contrive elaborately arcane scripts" in order to allow the plaintiff's Complaint to survive at this early stage of the litigation. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

In the antitrust context, a complaint containing vague pleadings lacking the requisite factual allegations of an antitrust claim is insufficient to state a cause of action. *Gilbuilt Homes, Inc. v. Continental Homes of New England*, 667 F.2d 209 (1st Cir.1981); *Americana Industries, Inc. v. Wometco de Puerto Rico, Inc.*, 556 F.2d 625 (1st Cir. 1977). With that in mind, the Court turns to the allegations in this Complaint.

### B. *Count I: Intra–HMO Combinations in Restraint of Trade*

■ Count I alleges that each of the 21 defendant HMOs violated § 1 of the Sherman Act, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States...." 15 U.S.C. § 1. To state a claim under § 1, then, plaintiffs must allege that 1) each of the defendants entered into an agreement ("contract, combination ... or conspiracy"), and 2) that agreement was in "restraint of trade or [interstate] commerce." *See Monahan's Marine, Inc. v. Boston Whaler, Inc.,* 866 F.2d 525, 526 (1st Cir.1989).

Defendants contend that plaintiffs have failed to identify any specific facts to support either element of their conspiracy claim and therefore the "conclusory and indiscriminate" allegations in the Complaint are so vague and lacking in detail as to warrant immediate dismissal. The plaintiffs counter that their Complaint is sufficiently specific, yet concentrate most of their brief on distinguishing the cases cited by the defendants, rather than directing this Court to those particular factual allegations in the Complaint which would tend to support their legal theories. Without much help from the plaintiffs, then, this Court has searched the Complaint for any such specific factual allegations and now turns to the relevant language of the Complaint itself.

■ Paragraphs one through twenty-two of the Complaint provide background material as to the general nature of the case (¶ 1), jurisdiction and venue (¶¶ 2–3) and the parties (¶¶ 4–22). Paragraphs 23 and 24 allege that the "MD boycott of chiropractic physicians" is not over. Commencing with paragraph 25, the Complaint describes, in not entirely comprehensible terms, the formation of the alleged "intra-HMO combinations" of Count I summarized as follows:

1. The defendant HMOs use financial incentives for MDs to limit referrals to other providers such as chiropractic physicians. More specifically, MDs are paid fees and bonuses as the number of referrals decrease. Plaintiffs allege that within each defendant HMO, "the MDs have actually formed combinations in order that these financial incentives should be calculated—not for individual MDs—but for groups thereof. Such combina-tions are in restraint of referrals to outsiders, such as chiropractic physicians—in violation of the antitrust laws." (¶ 25)

2. Within each defendant HMO, "two or more of the persons in power—whose identities are well known within each said HMO, including without limitation persons serving as administrators, directors, MDs, medical directors, officers *or* policy makers—have formed one or more combinations in re-play of the boycott of chiropractic physicians. Said combinations are in restraint of the provision of health care services." (¶ 26) (emphasis supplied)

3. Such "concerted activity of MDs agreeing among themselves to under-refer enrollees to chiropractic physicians in order to bolster the overall MD income ... jeopardizes the competitive process" by depriving each HMO of independent centers of decision-making for the benefit of the HMO. (¶ 27)

4. Participants in the combinations, though they may be employees, officers or agents of the HMOs, are "acting outside the interests of the HMO. Each participant has broken away from his or her supposed unity of interest with the HMO. Each of the participants is excessively driven by objectives that are disparate from those of the HMO—by an impermissible personal stake." (¶ 28)

Although this Court is obligated to accept well-pleaded factual allegations as true, the Court has struggled to discern the factual bases of the allegations in this case. The plaintiffs claim that individuals within each of the 21 defendant HMOs entered into 21 separate conspiracies, yet they utterly fail to offer or point to any facts in support of their broad, as well as vague, assertions. Plaintiffs have not pleaded, with any specificity, facts concerning how any one of the 21 conspiracies operated, a single act taken in furtherance of any conspiracy, a single meeting or communication between or among any of the participants in the conspiracy, or any document evidencing any of the 21 conspiracies. Despite frequent reference to "combinations" in the Complaint, plaintiffs offer no insight into the specific nature of the alleged conspiratorial activities.

Moreover, the Court notes that the plaintiffs' allegations are not entirely clear even as to the positions of the participants in the conspiracies. While paragraphs 25 and 27 affirmatively allege that it is the MDs who have formed these 21 combinations in restraint of trade, paragraph 26 suggests that the alleged participants could be any number of "administrators, directors, MDs, medical directors, officers *or* policy makers" (emphasis supplied) who have formed such combinations within each HMO. Such a lack of clarity in identifying the alleged conspirators, in and of itself, undermines plaintiffs' claim that they have sufficient factual grounds upon which to bring their Complaint and highlights the vague and sweeping nature of their allegations.

▇▇▇ Even if plaintiffs had alleged sufficient facts to support claims of conspiracies within each of the 21 defendant HMOs, such claims of intra-enterprise conspiracies would nevertheless fail. The Supreme Court concluded in *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), that officers, agents or employees of an individual entity were incapable of conspiring together for purposes of § 1 of the Sherman Act. Although the Court noted that nothing in the literal language of § 1 specifically excluded coordinated conduct among officers or employees of the same entity, the Court went on to reason that

> it is perfectly plain that an internal "agreement" to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police. The officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals.... For these reasons, officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy.

*Copperweld,* 467 U.S. at 769, 104 S.Ct. at 2740–41.

In interpreting the *Copperweld* case, the First Circuit Court of Appeals has found that the "critical inquiry" is whether the alleged participants in the antitrust conspiracy have a "unity of interests" with the entity; or whether, instead, any of the participants have pursued interests diverse from, or competitive with, those of the entity itself. *Sullivan v. National Football League,* 34 F.3d 1091, 1099 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995).

In the instant case, the plaintiffs allege that

1. the participants in the conspiracies were "acting outside the interests of the HMO" and had "broken away from his or her supposed unity of interest with the HMO" (Complaint, ¶ 28), and
2. because the conspirators had "impermissible personal stake[s]" in the HMO, each of them was "excessively driven" by objectives that were "disparate" from those of the HMO.

Such vague allegations of divergent interests between the conspirators and HMOs, however, not only lack any factual support, thereby warranting dismissal, but also are inherently contradictory to other allegations in the Complaint.

More specifically, plaintiffs contend that the conspirators pursued separate economic interests from those of the HMOs because even where chiropractic care is safer and more cost-effective than medical care, the conspirators agreed "among themselves to under-refer enrollees to chiropractic physicians in order to bolster the overall MD income" (Complaint, ¶ 27) and purposely "steered their enrollees to medical doctors...." (Complaint, ¶ 1). Such referrals to higher-cost medical doctors, rather than to lower-cost chiropractors, are contrary to the best interests of the HMOs because they cost the HMOs more money. They are alleged to be in the best interests of the conspirators (and to create "impermissible personal stakes" in the HMOs) presumably because the conspirators increase their income as the number of referrals decreases.

Upon closer scrutiny, however, it is clear that such alleged conspiracies do not constitute intra-enterprise antitrust conspiracies. If the conspirators have agreed to under-refer enrollees to chiropractors, they either 1) over-refer enrollees to medical doctors to compensate for such under-referrals, or 2) simply under-refer to chiropractors, without a corresponding increase in referrals to medical doctors. Under the first alternative, the

*total* number of referrals remains the same, the conspirators do not increase their income and the alleged divergent financial incentive of the conspirators to under-refer enrollees to chiropractors does not exist. Under the second alternative, the total number of referrals decreases and both the conspirators and the HMOs increase their income under the alleged incentive system. The financial interests of the conspirators, in the latter case, do not diverge from those of the HMOs. In neither event does the plaintiffs' allegation of divergent interests between the conspirators and their HMOs make any sense.

This Court therefore concludes that the plaintiffs' allegations, florid and descriptive as they may be, are not sufficiently factual in nature, specific in content or consistent in substance to state a claim of combination or conspiracy under § 1 of the Sherman Act.

C. *Count II: Inter–HMO Combinations in Restraint of Trade*

■ Count II of the plaintiffs' Complaint is entirely derivative of the 21 intra-HMO conspiracies alleged in Count I. The Complaint alleges, in just one paragraph, that:

[r]epresentatives of the defendant HMOs have agreed with each other, to tolerate the aforesaid combinations within each HMO, in restraint of trade. In so agreeing, each ostensible representative is acting outside the interests of his or her HMO, having broken away from his or her supposed unity of interest for the impermissible sake of a personal stake. (¶ 33).

Because this Court finds that Count I fails to state a claim upon which relief can be granted for the reasons set forth above, Count II also fails to state such a claim.

D. *Count III: Intra–HMO Combinations To Monopolize*

Count III alleges another set of 21 intra-HMO combinations, but these combinations are said to violate § 2 of the Sherman Act, which provides sanctions for "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States...." 15 U.S.C. § 2. The pertinent

allegations of the Complaint are summarized as follows:

1. Within each defendant HMO, "two or more of the persons in power—whose identities are well known within each said HMO, including without limitation persons serving as administrators, directors, MDs, medical directors, officers *or* policy makers—have formed one or more combinations to disable enrollees from engaging in accurate pricing. These combinations are designed to make the task of acquiring data and undertaking analysis so difficult and costly that enrollees will find it prohibitive." (¶ 34) (emphasis supplied)

2. The effect of such combinations is to "lock-in the enrollees" within each HMO, thereby "throttling market forces" and preventing the HMOs "from acting as pure complements to one another and to insurers." The combinations "make a farce of interchangeability of use, or cross-elasticity of demand, between one HMO and its rivals. They intentionally cause each respective HMO to assume complete control of the provision of health care services within its sub-market. The combinations are ones to monopolize the provision of health care services." (¶ 35)

■ As with Count I, the intra-enterprise conspiracy claims of Count III are insufficient because plaintiffs have failed to state any factual grounds for their conclusory allegations that there exist 21 antitrust conspiracies to monopolize. For example, plaintiffs have identified no facts whatsoever with respect to how any of the 21 alleged combinations were formed, operated or maintained, how they prevented enrollees from "engaging in accurate pricing", how they were specifically "designed" to make it prohibitively difficult and costly for enrollees to acquire data and perform analysis, or how the combiners "intentionally" caused each HMO "to assume complete control of the provision of health care services within its sub-market." Moreover, plaintiffs have made no specific factual references to the policies of each defendant HMO with regard to chiropractors or to how such combinations have affected those policies. The vague and indiscriminate allega-

tions of Count III simply do not sufficiently state a claim for relief.

## III. CONCLUSION

Because this Court concludes that the plaintiffs have failed to plead sufficient facts to state claims of conspiracy under §§ 1 and 2 of the Sherman Act, Counts I, II and III of their Complaint will be dismissed. The Court does not reach the merits of the defendants' remaining grounds for dismissal of the Complaint.

The Court declines defendants' request to dismiss all counts of the plaintiffs' Second Amended Complaint with prejudice although it is well aware 1) that the plaintiffs have twice previously amended their Complaint and 2) of the substantial costs incurred thus far by defendants in litigating this multiparty, antitrust dispute. Because this is the first time that the merits of the Complaint have come under the scrutiny of this Court, it will dismiss the Complaint without prejudice. The Court, however, hereby notifies the plaintiffs that if a subsequent insufficient complaint is filed, costs shall be awarded to the defendants.

### ORDER

For the foregoing reasons:

1. Defendants' Joint Motion to Dismiss the Second Amended Complaint is ALLOWED, and
2. Counts I, II and III of the plaintiffs' Second Amended Complaint are DISMISSED without prejudice.

So Ordered.