Valentino FACEY, Plaintiff,

v.

Thomas DICKHAUT, Anthony
Mendonsa, and R. Raymond,
Defendants.

C.A. No. 11–10680–MLW.

United States District Court,
D. Massachusetts.

Sept. 25, 2012.

Facey Valentino, Shirley, MA, pro se.

Joan T. Kennedy, Department of Correction, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

WOLF, District Judge.

## I. INTRODUCTION

*Pro se* Plaintiff Valentino Facey alleges his Eighth Amendment right to be free from cruel and unusual punishment was violated when correctional officials knowingly placed him in danger by assigning him to a housing unit where he was violently attacked by members of a rival gang. He brings this action under 42 U.S.C. § 1983.

The defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons described below, the defendants' motion is being allowed in part and denied in part. Specifically, the plaintiff's claims against the defendants in their official capacities are being dismissed on grounds of sovereign immunity, and the plaintiff's claims against Superintendent Thomas Dickhaut are being dismissed because the plaintiff has not adequately alleged that Dickhaut violated a clearly established constitutional right. However, the plaintiff has sufficiently alleged a violation of the Eighth Amendment by defendants are not entitled to have the complaint dismissed on grounds of qualified immunity. Accordingly, this litigation may proceed against defendants Mendonsa and Raymond in their individual capacities.

## II. BACKGROUND

The plaintiff is an inmate at the Souza Baranowski Correctional Center (SBCC). In a complaint filed on April 14, 2011, he alleges the following.

The plaintiff is a known member of the Blood Gang, and the members of that gang are known enemies of the Gangster Disciples. On June 7, 2010, despite the facility's policy of keeping apart known enemies, the plaintiff was placed in a housing unit on the "South Side" of the facility, where Gangster Disciples reside. Upon entering this housing unit, the plaintiff was attacked by three members of the Gangster Disciples who beat him and broke his jaw in two places. As a result, the plaintiff endured a substantial period of treatment and will have to have a metal plate in his jaw for the rest of his life.

Defendant Thomas Dickhaut is the Superintendent of SBCC. Defendant Anthony Mendonsa is the Deputy Superintendent of SBCC and assigns all prisoners to their designated housing areas. Defendant Sergeant R. Raymond is the assignment officer who carries out Mendonsa's orders. The plaintiff alleges that the defendants violated his rights under the Eighth Amendment to the United States Constitution by deliberately putting him in a housing unit where they knew his life would be in danger. Each is sued in their individual and official capacity, and the plaintiff seeks compensatory and punitive damages.

In their July 20, 2011 Motion to Dismiss, the defendants state that Facey failed to exhaust all administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(a).

The defendants further assert that the doctrine of sovereign immunity protects them from being sued in their official capacities for money damages, that the complaint does not allege sufficient facts to state a claim for relief under § 1983, and that they are entitled to qualified immunity.[1]

## III. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the court must "take all factual allegations as true and ... draw all *reasonable* inferences in favor of the plaintiff." *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 96 (1st Cir.2007); *see also Maldonado v. Fontanes,* 568 F.3d 263, 266 (1st Cir.2009). The court must "neither weigh[ ] the evidence nor rule[ ] on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Day v. Fallon Cmty. Health Plan, Inc.,* 917 F.Supp. 72, 75 (D.Mass.1996). A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Morales–Tanon v. P.R. Elec. Power Auth.,* 524 F.3d 15, 18 (1st Cir.2008) (applying the *Bell Atlantic* standard to a claim under 42 U.S.C. § 1983); *Rodriguez–Ortiz,* 490 F.3d at 95–96 (applying the *Bell Atlantic* standard to a claim under the Private Securities Litigation Reform Act).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing

---

**1.** As additional grounds for dismissal, the defendants assert that to the extent that the plaintiff's complaint can be read to raise claims under Massachusetts law, these claims fail as a matter of law. Facey does not respond to this ground in his opposition to the motion to dismiss. However, the court does not construe the complaint to raise claims other than under 42 U.S.C. § 1983 for violation of the Eighth Amendment to the United States Constitution. Accordingly, the court need not consider the argument that the plaintiff has failed to state a claim for relief under state law.

that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic,* 550 U.S. at 555, 127 S.Ct. 1955. A court may disregard " 'bald assertions, unsupportable conclusions, and opprobrious epithets.' " *In re Citigroup, Inc.,* 535 F.3d 45, 52 (1st Cir.2008) (quoting *Ruiz v. Bally Total Fitness Holding Corp.,* 496 F.3d 1, 4 (1st Cir.2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (emphasis added) (quoting *Bell Atlantic,* 550 U.S. at 570, 127 S.Ct. 1955). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atlantic,* 550 U.S. at 557, 127 S.Ct. 1955).

Rule 8 requires a plaintiff to " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic,* 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see Rivera v. Rhode Island,* 402 F.3d 27, 33 (1st Cir.2005). It must afford the defendant (s) a " 'meaningful opportunity to mount a defense.' " *Diaz–Rivera v. Rivera–Rodriguez,* 377 F.3d 119, 123 (1st Cir. 2004) (quoting *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1172 (1st Cir. 1995)); *see Redondo–Borges v. U.S. Dep't of Hous. and Urban Dev.,* 421 F.3d 1, 5 (1st Cir.2005). "[I]n a civil rights action as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriquenos en Accion v.*

*Hernandez,* 367 F.3d 61, 68 (1st Cir.2004). Although "the requirements of Rule 8(a)(2) are minimal ... 'minimal requirements are not tantamount to nonexistent requirements.' " *Id.* (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988)).

■ As the plaintiff is proceeding *pro se,* this court will "liberally construe[ ]" his complaint, "however inartfully pleaded." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see also Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.,* 209 F.3d 18, 23 (1st Cir.2000). Where a *pro se* plaintiff presents sufficient facts, "the court may intuit the correct cause of action," even if the claim was imperfectly pleaded. *See Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir.1997). "However, *pro se* status does not insulate a party from complying with procedural and substantive law." *Id.*

Ordinarily, a court will not consider documents outside of the pleadings in a motion to dismiss. *Rivera v. Centro Medico de Turabo, Inc.,* 575 F.3d 10, 15 (1st Cir. 2009); *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993). From this rule, the First Circuit makes a "narrow exception for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* at 3–4; *see Beddall v. State St. Bank & Trust, Co.,* 137 F.3d 12, 16–17 (1st Cir.1998) (When "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and

the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").[2]

## IV. ANALYSIS

### A. *Exhaustion Requirement*

The defendants assert that Facey's claim must be dismissed for failure to exhaust administrative remedies because he did not file a timely appeal of the decision of the grievance officer. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Further, exhaustion is required "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably, money damages." *Id.* at 524, 122 S.Ct. 983 (citing *Booth v. Churner,* 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)).

■ The exhaustion requirement is one of "proper exhaustion," rather than "exhaustion simpliciter." *See Woodford v. Ngo,* 548 U.S. 81, 88, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). In other words, it is not enough for prisoners to have presented their claims through administrative channels, if "grievances were dismissed because prisoners had missed deadlines set by the grievance policy." *See Jones,* 549 U.S. at 217–18, 127 S.Ct. 910; *Woodford,* 548 U.S. at 88, 93, 126 S.Ct. 2378. Instead, exhaustion requires compliance with the procedural requirements of all levels of administrative review. *See Woodford,* 548 U.S. at 90–91, 93, 126 S.Ct. 2378 (2006); *see also Johnson v. Thyng,* 369 Fed.Appx. 144, 147–48 (1st Cir.2010) (unpublished per curiam decision) (rejecting contention that, because third level administrative review could be characterized as "optional," it did not have to be exhausted before prisoner could file federal suit).

■ The scope of the exhaustion requirement, therefore, depends on the available administrative grievance procedure. *Jones,* 549 U.S. at 218, 127 S.Ct. 910 ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Inmate grievances in state correctional institutions within the Massachusetts Department of Correction are governed by 103 CMR 491.00 *et seq. See* 103 CMR 491.04. Pursuant to these regulations, an inmate must file a grievance within ten working days of the incident or situation that is the subject of the grievance or within ten days of becoming aware of the incident or situation. 103 CMR 491.08(4). The Institutional Grievance Coordinator must provide written notification to the inmate of receipt of the grievance, investigate the grievance, and propose a resolution or deny the grievance within ten working days from receipt of

**2.** Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

the grievance. 103 CMR 491.10(1)(a), (c) and (e). The Institutional Grievance Coordinator must provide the inmate with a written explanation regarding the proposed resolution of the grievance or the reasons for denial of the grievance. 103 CMR 491.10(1)(f). Pursuant to regulation, denied grievances must inform the inmate of the right to appeal. 103 CMR 491.10(4).

An inmate whose grievance has been denied may appeal to the Superintendent within ten working days of receipt of the decision. 103 CMR 491.12. The Superintendent's office must provide written notification of receipt of the appeal to the inmate, and the Superintendent must respond to the grievance in writing within thirty working days of receipt. *Id.* Grievance appeals denied by the superintendent are forwarded to the departmental grievance coordinator, who may take any action upon review of a grievance that the Superintendent is authorized to take. 103 CMR 491.13. The regulations further provide that "[f]ailure by a grievant to comply with the time restrictions imposed by 103 CMR 491.000, unless waived by the Institutional Grievance Coordinator or Superintendent, shall terminate the grievance process." 103 CMR 491.19.

In this case, the defendants assert that Facey failed to exhaust his administrative remedies because he did not timely file an appeal of the decision of the Inmate Grievance Coordinator. Attached to the defendants' Motion to Dismiss is an affidavit by Pamela O'Dell, Grievance Coordinator at SBCC, which discusses the operation of the grievance procedure in general and in connection with Facey's grievance in this case. Specifically, it asserts that although the defendant filed his initial grievance on July 27, 2010, his appeal was not submitted until January 28, 2011, and was denied as untimely. Attached to the affidavit is a record of Facey's original grievance, which sought money damages and proper housing placement. This record reflects that the grievance was partially approved by O'Dell on September 20, 2010, with a notation that Facey's housing assignment had already been changed. Also attached to O'Dell's affidavit is a record of Facey's grievance appeal, dated January 28, 2011. This record indicates that the appeal was denied on March 10, 2011 for failure to comply with the applicable time restrictions.[3]

Facey asserts in his opposition to the motion to dismiss and in an attached affidavit that he never received an answer to his initial grievance. Specifically, he states that after submitting his appeal, he received a back-dated response to the initial grievance.[4] Indeed, this assertion is to some extent corroborated by the grievance records submitted by the defendants: The appeal record indicates that Facey wrote, "I haven't heard back from you since I filed the initial grievance. So I'm taking

---

3. The grievance record indicates that the Institutional Grievance Coordinator did not assert that Facey's original grievance was untimely. Nor do the defendants argue before this court that Facey's complaint is subject to dismissal on the grounds that he did not timely file a grievance following the June 7, 2010 incident. *See Reed–Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir.2010) ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we ... [W]ho are we to

second guess its decision to overlook or forgive its own procedural bar?").

4. The plaintiff asserts in his opposition to the motion to dismiss that the grievance office at SBCC regularly delays responding to grievances for months. Attached to his opposition is an affidavit signed by an inmate who identifies himself as a jailhouse lawyer and prisoners' rights advocate, and states that administrators at SBCC have provided late responses to grievances on numerous occasions as part of an effort to discourage the filing of lawsuits.

that my grievance was denied." Facey's claim not to have received a decision regarding his appeal is consistent with the allegations in his complaint. The complaint alleges that the plaintiff filed a grievance about the incident, received no response within the required ten day period, and appealed as if there had been a denial.

■■■ For the reasons described below, the defendants' motion to dismiss on grounds of failure to exhaust is being denied. First, the Supreme Court has made clear that there is no requirement that an inmate plead or demonstrate exhaustion in a complaint. *See Jones*, 549 U.S. at 216, 127 S.Ct. 910. Rather, the failure to exhaust is an affirmative defense, *see id.*, and it must be proven by the defendant. *See Cruz Berrios v. Gonzalez–Rosario*, 630 F.3d 7, 11 (1st Cir.2010). An inmate's complaint is subject to dismissal for failure to exhaust if the allegations in the complaint, taken as true, suffice to establish the failure to exhaust. *See Jones*, 549 U.S. at 215, 127 S.Ct. 910. In this case, the complaint alleges that the plaintiff received no response to his grievance within the required ten day period, and appealed as if there had been a denial, and the regulations do not appear to provide a procedure to be followed by an inmate who receives no response from a grievance. Therefore, nothing on the face of the complaint establishes a failure to exhaust administrative remedies. *See Dantone v. Bhaddi*, 570 F.Supp.2d 167, 172–73 (D.Mass.2008) (denying motion to dismiss for failure to exhaust where "the matter cannot be determined from a review of the four corners of the complaint"); *see also Thompson v. Worcester County*, C.A. 10–40126–FDS, 2011 WL 4829972, *4 (D.Mass. Oct. 11, 2011) (denying motion to dismiss for failure to exhaust where allegations in complaint, if true, establish plaintiff exhausted administrative remedies); *cf. Price v. Shinn*, 178 Fed.Appx. 803, 805 (10th Cir.

2006) (finding prisoner failed to exhaust when he failed to move on to the next step of the administrative process after allegedly receiving no response to grievance, where the regulations allow an inmate who does not receive a response to a grievance by the due date to move on to the next step of the grievance process within five days).

The defendants assert that certain records of Facey's grievance and appeal, submitted along with their motion to dismiss, are "merged" with the pleadings, *see Beddall*, 137 F.3d at 16, and that these documents demonstrate that the plaintiff did not timely file an appeal to the Superintendent after his grievance was partially denied by the Institutional Grievance Officer. As described earlier, these records indicate that the plaintiff filed a grievance on July 27, 2010, that it was partially approved and partially denied on September 20, 2010, that the plaintiff did not appeal this denial until January 28, 2011, and that his appeal was denied on March 10, 2011 as untimely. However, although the plaintiff discusses administrative exhaustion in one paragraph of his complaint, the records of his administrative grievance are not "central" to the substance of the complaint, nor are the documents themselves referenced at all in the complaint. *See Watterson*, 987 F.2d at 3–4. Unlike in other cases where courts have considered documents to be merged to the complaint, the allegations in Facey's complaint do not "revolve around" the grievance records, *see Young v. Lepone*, 305 F.3d 1, 11 (1st Cir.2002), and these records are not discussed "at considerable length" in the complaint, *see Beddall*, 137 F.3d at 16. Nor is the authenticity of the grievance documents unchallenged, *see id.* at 17, because the defendant asserts in the affidavit accompanying his opposition to the motion to dismiss that the decision of the Institutional Grievance Coordinator was back-dated.

Even if the court were to consider these grievance documents in deciding the motion to dismiss, the records are not inconsistent with Facey's claim that he did not receive a response to his initial grievance. Instead, these records demonstrate that, although Facey's grievance appears to have been decided in September, 2010, Facey stated in his appeal in January, 2011 that he had not yet received a response to the grievance. The defendants' motion to dismiss on grounds of failure to exhaust is, therefore, being denied.

### B. Eleventh Amendment—Sovereign Immunity

The defendants argue that the § 1983 claim brought against them in their official capacities should be dismissed because the Eleventh Amendment and the doctrine of sovereign immunity protect them from being sued in their official capacity for money damages. The Eleventh Amendment, which is said to implement the immunity that states enjoy by virtue of their sovereignty, see Fed. Mar. Comm'n v. S. Carolina State Ports Auth., 535 U.S. 743, 751–53, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002), protects states from being sued by individuals without their consent. See Frew v. Hawkins, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). Specifically, a state "may not be sued for damages in federal court unless [it] has consented, or its immunity has been waived, or Congress has overridden the immunity." Fred v. Roque, 916 F.2d 37, 38–39 (1st Cir.1990). Although Congress has the power to abrogate this sovereign immunity and authorize suits against the states, the Supreme Court has held that Congress did not do so in the case of § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 67, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

State officials acting in their official capacity "stand in the shoes of the state and enjoy the same immunity." Coggeshall v. Mass. Bd. of Reg. of Psychologists, 604 F.3d 658, 662 (1st Cir.2010). Just as states cannot be sued under § 1983, the Supreme Court has held that § 1983 does not authorize suits against state officials in their official capacity. See Will, 491 U.S. at 70–71, 109 S.Ct. 2304. The plaintiff's claims against the defendants in their official capacities are, therefore, being dismissed.

### C. Sufficiency of the Pleading

Defendants next allege that the complaint should be dismissed because the plaintiffs have not alleged sufficient facts to state a claim under § 1983. As stated earlier, where a motion to dismiss has been filed, the court must determine "whether, as to each defendant, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." Sanchez v. Pereira–Castillo, 590 F.3d 31, 48 (1st Cir.2009).

"An actionable section 1983 claim must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." Romero–Barcelo v. Hernandez–Agosto, 75 F.3d 23, 32 (1st Cir.1996) (quoting Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir.1992)); see also Harron v. Town of Franklin, 660 F.3d 531, 535 (1st Cir.2011). In this case, the constitutional provision that the plaintiff alleges was violated is the Eighth Amendment's prohibition against cruel and unusual punishment. The Eighth Amendment requires prison officials to "provide humane conditions of confinement; prison officials must ensure that

inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–527, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). As part of this obligation, "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Id.* at 833, 114 S.Ct. 1970 (quoting *Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558 (1st Cir.1988)).

As the Supreme Court explained, however, "[i]t is not ... every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834, 114 S.Ct. 1970. Instead:

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious.... For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.
>
> The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety

*Id.; see also Giroux v. Somerset County,* 178 F.3d 28, 32 (1st Cir.1999). Specifically, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that

risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847, 114 S.Ct. 1970. This means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw that inference." *Id.* at 837, 114 S.Ct. 1970; *see also Calderon–Ortiz v. La-Boy–Alvarado,* 300 F.3d 60, 64 (1st Cir. 2002).

The complaint in the instant case is sufficient to state a claim under § 1983 against defendants Mendonsa and Raymond. The complaint alleges that "[t]he Defendants" were aware of the feud between the Bloods and the Gangster Disciples, that the plaintiff is a "known member" of the Bloods, that "[a]ll prisoners" are checked for enemy situations before being housed, and that "[t]he Defendants" placed him on the South Side of the facility, where all the Gangster Disciples reside. It further alleges that Mendonsa assigns "all prisoners" to their housing areas, and that Raymond is the Assignment Officer and carries out his orders. Although the plaintiff might have more artfully stated a claim against these officials by expressly alleging that Mendonsa and Raymond knew that he was a member of the Bloods and that Mendonsa and Raymond assigned him to be housed on the South Side, both of these allegations can be readily inferred from the complaint itself. "[L]iberally construed," the *pro se* complaint sufficiently alleges that Mendonsa and Raymond knowingly disregarded a substantial risk of serious harm to the plaintiff by housing him in an area with his known enemies. *See Erickson,* 551 U.S. at 94, 127 S.Ct. 2197 (quoting *Estelle,* 429 U.S. at 106, 97 S.Ct. 285); *see also Calderon–Ortiz,* 300 F.3d at 65–66 (plaintiff's § 1983 claim based on violation of Eighth Amendment adequately alleged defendants had requisite knowledge, conduct created substan-

tial risk to inmates, and plaintiff suffered serious harm).

 However, the plaintiff has not adequately stated a claim against Dickhaut. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Sanchez,* 590 F.3d at 49 (quoting *Iqbal,* 556 U.S. at 676, 129 S.Ct. 1937). In other words, a supervisory official may not be held liable by virtue of his or her position, *see Soto–Torres v. Fraticelli,* 654 F.3d 153, 159 (2011), but may be liable for his or her own conduct. *See Sanchez,* 590 F.3d at 49; *see also Camilo–Robles v. Zapata,* 175 F.3d 41, 44 (1st Cir.1999) ("[T]he actions of persons sued in their individual capacities under section 1983 must be assessed on their own terms."). Where a subordinate is alleged to have committed a violation of the plaintiff's constitutional rights, a supervisor may be liable if he or she "supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." *Sanchez,* 590 F.3d at 49 (quoting *Camilo–Robles,* 175 F.3d at 44).

 The complaint here identifies Dickhaut as the Superintendent of SBCC and states that Dickhaut and Mendonsa instituted a policy requiring the separation of known enemies. It contains some general allegations, described earlier, that "[t]he Defendants" were aware of the feud between the Bloods and the Gangster Disciples and placed the plaintiff on the South Side of the facility, where he was attacked. However, to the extent that these general statements are intended as allegations of knowledge and direct participation on the part of Dickhaut, they are too "threadbare" and "speculative" to be accorded the presumption of truth, particularly given the absence of any other allegation specifically linking Dickhaut to the events of the case. *See Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d 592, 595 (1st Cir.2011); *see also Soto–Torres,* 654 F.3d at 159.

These allegations are insufficient to state a claim that Dickhaut was directly involved in the incident in which the plaintiff's rights were allegedly violated. *See Sanchez,* 590 F.3d at 49. The complaint is also insufficient to state a claim of supervisory liability because it does not contain any allegations showing that Dickhaut was deliberately indifferent in supervising or training the officials who are directly alleged to have placed the plaintiff in danger. *See id.* at 49–50. Accordingly, the complaint is being dismissed in its entirety as to Dickhaut.

**D.** *Qualified Immunity*

 The defendants assert that they are entitled to qualified immunity because the plaintiff has not alleged a violation of clearly established law. Qualified immunity prevents suits against federal and state officials for money damages "unless (1) the facts alleged or shown by the plaintiff make out a violation of a constitutional right and (2) such right was clearly established at the time of the defendants' alleged violations." *Feliciano–Hernandez v. Pereira–Castillo,* 663 F.3d 527, 532 (1st Cir.2011) (internal quotations omitted), cert. denied, —— U.S. ——, 132 S.Ct. 2742, 183 L.Ed.2d 615 (2012); *see Ashcroft v. al-Kidd,* —— U.S. ——, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). Therefore, "[t]he classic question that a qualified immunity defense poses is whether the allegedly violated federal right was established with sufficient clarity that a reasonable government functionary should have conformed his conduct accordingly." *Camilo–Robles,* 175 F.3d at 43.

 "The first prong of the immunity analysis requires that a plaintiff state a claim of violation of a constitutional right."

*Feliciano–Hernandez,* 663 F.3d at 533. This is the same inquiry performed in determining whether a complaint has sufficiently pleaded a § 1983 claim under Rule 8(a) of the Federal Rules of Civil Procedure. *See id.; Heyne v. Metro. Nashville Pub. Sch.,* 655 F.3d 556, 562 (6th Cir.2011). To satisfy this first prong of the qualified immunity inquiry, the plaintiff must "plead adequately that the individual defendants violated his constitutional rights," rather than merely alleging a violation by someone. *See Feliciano–Hernandez,* 663 F.3d at 533–35; *Maldonado,* 568 F.3d at 268, 273–75; *see also Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 91 (1st Cir. 1994) ("[A] plaintiff must establish that a particular defendant violated the plaintiff's federally protected rights."). For the reasons stated earlier, the plaintiff has adequately stated a § 1983 claim against Mendonsa and Raymond, but not against Dickhaut. Accordingly, Dickhaut is entitled to qualified immunity based on the first prong the qualified immunity analysis.

The second prong of the qualified immunity analysis requires that the right have been clearly established at the time that it was allegedly violated. *See Feliciano–Hernandez,* 663 F.3d at 532. "A right is clearly established only if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 532 (quoting *Soto–Torres,* 654 F.3d at 158). This second prong of the qualified immunity inquiry has two parts: "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official." *Diaz–Bigio v. Santini,* 652 F.3d 45, 50 (1st Cir.2011). As the First Circuit has explained:

> One aspect of the analysis focuses on the clarity of the law at the time of the alleged civil rights violation. To overcome qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights.... Cognizant of both the contours of the allegedly infringed right and the particular facts of the case, the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. That is, the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional.

*Maldonado,* 568 F.3d at 269 (internal quotations omitted); *see also Barton v. Clancy,* 632 F.3d 9, 22 (1st Cir.2011).

The proper operation of qualified immunity "depends substantially upon the level of generality at which the relevant legal rule is to be identified." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see al-Kidd,* 131 S.Ct. at 2084. "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)); *see also Maldonado,* 568 F.3d at 269; *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.,* 654 F.3d 975, 987 (9th Cir.2011), cert. denied, —— U.S. ——, 132 S.Ct. 1566, 182 L.Ed.2d 168 (2012). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity that our

cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson,* 483 U.S. at 639, 107 S.Ct. 3034.

■ In this case, the right that defendants Mendonsa and Raymond are alleged to have violated is well established. As the First Circuit noted in 1988, "[w]hen prison officials intentionally place prisoners in dangerous surroundings, when they intentionally ignore prisoners' serious medical needs, or when they are 'deliberately indifferent' either to prisoners' health or safety, they violate the Constitution." *Cortes–Quinones,* 842 F.2d at 558; *see also Calderon–Ortiz,* 300 F.3d at 64–66 ("Prison officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates."). Addressing whether officials had qualified immunity in a case involving the 1981 killing of an inmate in jail, the First Circuit found "it was well established that 'deliberate indifference' to a prisoner's health and safety violated the Eighth Amendment." *Cortes–Quinones,* 842 F.2d at 561. In 1994, the Supreme Court elaborated the standard for deliberate indifference, holding, among other things, that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. However, the Court also stated that a prison official could not "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843, 114 S.Ct. 1970. Similarly, such an official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist (as when a prison official is aware of a high probability of facts indicating that one prisoner has planned an attack on another but resists opportunities to obtain final confirmation ...)." *Id.* at 843 n. 8, 114 S.Ct. 1970; *see also Giroux,* 178 F.3d at 33–34 (reversing grant of summary judgement in favor or prison official; finding jury could conclude that official was deliberately indifferent to known risk that inmate would be attacked).

Examining the "particular facts of the case" as alleged against Mendonsa and Raymond, the court also finds that "a reasonable defendant would have understood that his conduct violated the [plaintiff's] constitutional rights." *Maldonado,* 568 F.3d at 266, 269. It was well established at the time of the alleged incident that prison officials violate the Eighth Amendment if they disregard a known, substantial risk to an inmate's health or safety, *see Farmer,* 511 U.S. at 847, 114 S.Ct. 1970; *Cortes–Quinones,* 842 F.2d at 561, and the complaint adequately alleges that Mendonsa and Raymond knowingly disregarded the risk that the plaintiff would face if housed with members of the Gangster Disciples. Accordingly, the motion to dismiss on grounds of qualified immunity is being denied as to Mendonsa and Raymond.

## V. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The defendants' Motion to Dismiss (Docket No. 11) is ALLOWED with regard to claims against the defendants in their official capacities.

2. The Motion to Dismiss is ALLOWED with regard to all claims against defendant Thomas Dickhaut.

3. The Motion to Dismiss is DENIED with regard to claims against defendants

Anthony Mendonsa and R. Raymond in their individual capacities.

4. The parties shall comply with the attached Scheduling Order.

## SCHEDULING ORDER

This case is governed procedurally by the 1992 Amendments to the Local Rules of the United States District Court for the District of Massachusetts (the "Local Rules"), which implement the District's Civil Justice Expense and Delay Reduction Plan. Counsel must, therefore, comply with the relevant Local Rules in the litigation of this case.

It is hereby ORDERED pursuant to Fed.R.Civ.P. 16(b) and Local Rule 16(f) that:

[ ] 1. *Defendants* shall respond to the Amended Complaint by *October 26, 2012.*

[ ] 2. Any proposed party who has not yet been served shall be served by *October 5, 2012.* Counsel shall within 14 days thereafter file a return of service or a statement that service has not been accomplished and that the claims against the previously named proposed party shall be dismissed without prejudice.

[ ] 3. Any Motion to Amend the pleadings, or any Motion to File additional pleadings, shall be filed by *NA,* and responses shall be filed as required by the applicable provisions of the Federal Rules of Civil Procedure.

[ ] 4. The parties shall by *November 23, 2012* make the automatic document disclosure required by Federal Rules of Civil Procedure 26(a)(1) and Local Rule 26.2(A) and, if applicable, disclose the information required by Local Rule 35.1

[ ] 5. The parties shall by *November 23, 2012* make the disclosure authorized by Federal Rules of Civil Procedure 26(a)(1) and Local Rule 26.1(b)(1) and (2).

[ ] 6. All dispositive motions except motions for summary judgment shall be filed by *N*

*A* and responses shall be filed fourteen days thereafter pursuant to Local Rule 7.1.

[ ] 7. Discovery shall initially be limited to the issue(s) of _____, and shall be complete by _____.

[ ] 8. Counsel for the parties shall meet at least once to explore the possibility of settlement and report to the court by _____ the status and prospects for settlement.

If the case is not settled, the parties shall report whether they wish to participate in mediation to be conducted by a magistrate judge or attorney on the Court's panel of mediators.

[ ] 9. A settlement conference, which must be attended by trial counsel with full settlement authority or with their clients, shall be held on _____, at _____.

[ ] 10. A status and case management conference will be held by Magistrate Judge _____ on a date to be scheduled by him in _____.

[ ] 11. Plaintiff(s) and/or Counterclaim or Third Party Plaintiff (s) shall by *March 1, 2012* designate experts and disclose the information described in Fed.R.Civ.P. 26(a)(2), concerning each expert. Each other party shall by *April 19, 2013* designate expert(s) and disclose the information described in Fed.R.Civ.P. 26(a)(2).

[ ] 12. All discovery shall be complete by *June 21, 2013*

[ ] 13. MLW The parties shall confer and, by *July 26, 2013* file a report as to the prospects for settlement and whether Either party feels there is a proper basis for filing a motion for summary judgment.

[ ] 14. A scheduling conference will be held on *August 7, 2013* at *4:00 pm* and must be attended by trial counsel with full settlement authority or with their client(s).

If appropriate, a schedule for filing motions for summary judgment will be established at this conference.

[ ] 15. A final pretrial conference will be held on _____ at _____ and must be attended by trial counsel with full settlement authority or with their client. Counsel shall be prepared to commence trial as of the date of the final pretrial conference.

[ ] 16. Trial shall commence on _____.

[ ] 17. This case is hereby referred to Magistrate Judge _____ for all pretrial proceedings, including reports and recommendations concerning any dispositive motions.

All provisions and deadlines contained in this Order having been established with the participation of the parties to this case, any requests for modification must be presented to the judge or magistrate judge, if referred for case management proceedings. Any requests for extension will be granted only for good cause shown supported by affidavits, other evidentiary materials, or reference to pertinent portions of the record. The request shall be made by motion and shall contain the reasons for the request, a summary of the discovery which remains to be taken, and a date certain when the requesting party will complete the additional discovery.

Counsel are encouraged to seek an early resolution of this matter. Additional case management conferences may be scheduled by the Court or upon the request of counsel.